UNITED STATES, Appellee

v.

Allen J. SOLOMON, Private First Class
U.S. Marine Corps, Appellant

No. 13-0025

Crim. App. No. 201100582

United States Court of Appeals for the Armed Forces

Argued March 20, 2013

Decided May 8, 2013

STUCKY, J., delivered the opinion of the Court, in which BAKER, C.J., ERDMANN and RYAN, JJ., and EFFRON, S.J., joined.


Counsel


For Appellant:  Lieutenant Ryan C. Mattina, JAGC, USN (argued).

For Appellee:  Major David N. Roberts, USMC (argued); Major Paul M. Ervasti, USMC, and Major William C. Kirby, USMC (on brief); Colonel Stephen C. Newman, USMC, and Brian K. Keller, Esq.

Military Judges:  G. L. Simmons and Stephen F. Keane


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Solomon, No. 13-0025/MC

Judge STUCKY delivered the opinion of the Court:[1]

We granted review to determine whether the military judge abused his discretion when he admitted evidence under Military Rule of Evidence (M.R.E.) 413, and whether trial counsel's closing arguments on findings constituted prosecutorial misconduct amounting to plain error. We hold that the military judge's admission of M.R.E. 413 evidence was an abuse of discretion. We therefore need not decide whether trial counsel's closing arguments were error.

I.

Appellant, who was tried at a general court-martial composed of members with enlisted representation, entered mixed pleas. He was convicted pursuant to his pleas of violating a lawful general order and wrongful use of a controlled substance in violation of Articles 92 and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 912a (2006). Contrary to his pleas, Appellant was convicted of abusive sexual contact, indecent conduct, drunk and disorderly conduct, and obstruction of justice in violation of Articles 120 and 134, UCMJ, 10 U.S.C. §§ 920, 934 (2006). The convening authority approved the

_____

[1] We heard oral argument in this case at the United States Naval Academy as part of the Court's "Project Outreach." See United States v. Mahoney, 58 M.J. 346, 347 n.1 (C.A.A.F. 2003). This practice was developed as part of a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.

2

adjudged sentence of a dishonorable discharge, confinement for

six years, forfeiture of all pay and allowances, and reduction

to the lowest enlisted grade.  The United States Navy-Marine

Corps Court of Criminal Appeals (CCA) set aside and dismissed

the Article 134 specifications, and affirmed the remaining

findings.  United States v. Solomon, No. NMCCA 201100582, 2012

CCA LEXIS 291, at *16—*17, 2012 WL 3106790, at *6 (N-M. Ct. Crim.

App. July 31, 2012).  After reassessment, the CCA affirmed a

term of four years of confinement and the remainder of the

approved sentence.  Id. at *22, 2013 WL 3106790, at *8.

II.

A.

In December 2010, Appellant and Lance Corporal (LCpl) K

were roommates.  LCpl K testified that in the early morning of

17 December 2010, he:

> woke up at approximately 0320–0330 with his belted jeans
> open and pulled down to his ankles, along with his boxer
> shorts; the appellant was lying on top of him between his
> knees and rubbing his exposed genitals against LCpl K's.
> LCpl K testified that he pushed the appellant off and asked
> what he was doing.  The appellant did not respond, but
> returned to his own bed.  LCpl K turned on the light,
> pulled up his pants, and walked over to the appellant's bed
> to confront him.  The appellant was lying on the bed naked
> and clutching a cell phone to his chest.  LCpl K took the
> phone from the appellant and found three photos of his
> exposed genitals.
>
> LCpl K left the room to show the Duty Noncommissioned
> Officer (DNCO) the photos.  LCpl K stepped back in to
> retrieve his own cell phone, at which time the appellant
> attempted to grab his phone from LCpl K's hand.  A short

3

> struggle ensued, but ultimately the appellant regained
> possession of his cell phone and deleted the photos in
> front of LCpl K.  LCpl K then left and made his report.

Id. at *2–*3, 2012 WL 3106790, at *1.

B.

Prior to trial, Appellant moved to suppress evidence of three previous incidents proffered by the Government under M.R.E. 413 and alternatively under M.R.E. 404(b).  The military judge held a hearing pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839 (2006), to consider the motion.  The military judge granted the motion to suppress evidence of the first two incidents.

At the Article 39(a) hearing, the military judge heard arguments relating to the third incident -- an alleged sexual assault of LCpls B and R.  The Government proffered written statements that LCpls B and R made to Naval Criminal Investigative Services (NCIS) on November 17, 2009.  Those statements alleged that on November 14, 2009, LCpl B awoke in her barracks room at approximately 2:30–3:00 a.m. to someone touching her inside her panties.  As she rolled over, LCpl B saw an unidentified male walk over to where her roommate, LCpl R, lay sleeping, and saw him grabbing LCpl R's feet or ankles. LCpl B shouted and startled the intruder, who ran out through the bathroom into an adjoining room.  As the intruder passed through the lighted bathroom, LCpl B recognized Appellant:  he

4

lived on the same hallway, and she had daily contact with him during the preceding month.  LCpl R, who was roused by LCpl B's shout, pursued the intruder into the adjoining room.  When LCpl R returned, she told LCpl B that a window was loose in the adjoining room.  The two did not report the incident to anyone that night.  Two days later, LCpl R and LCpl B discovered that Appellant was apprehended for a DUI that night, "a few hours after our incident."  A noncommissioned officer overheard them discussing the incident in the barracks room, and they then initiated the report of the assault through their chain of command.  Appellant was acquitted of these allegations at an August 2010 general court-martial.

In addition to submitting the statements of LCpls B and R, the Government called one witness to testify at the Article 39(a) hearing about the incident -- Dr. Nancy Slicner, an expert in the forensic psychology of sexually deviant behavior. Slicner reviewed all three prior incident allegations and testified that Appellant had exhibited patterns of voyeurism escalating to the point of contact offenses, his predatory actions had several common characteristics, and he had the propensity to commit the sort of misconduct alleged in the instant case.

Defense counsel argued that Appellant's August 2010 acquittal of the alleged assaults against LCpls B and R greatly

reduced the strength of proof of that incident and its probative value.  In addition to the acquittal, defense counsel presented evidence of Appellant's alibi during the time the alleged assaults occurred.  According to an incident report from the Camp Pendleton Provost Marshal's Office, Appellant was taken into military police custody at 1:58 a.m. on November 15, 2009, for driving under the influence after a gate sentry observed his erratic approach to the San Luis Ray Gate to Camp Pendleton.  He was not released until 3:26 a.m.  Both of the lance corporals' statements allege that the assaults occurred between 2:30 and 3:00 a.m.  Defense counsel also submitted an e-mail from Appellant's defense counsel at the previous court-martial.  The e-mail detailed the factors the prior defense counsel believed contributed to Appellant's acquittal including, inter alia, that Appellant "was arrested for DUI 45 minutes away coming on to base (not off) at the San Luis Rey Gate at 0152 [sic] by MPs" at the same time LCpls B and R claim to have been assaulted.

The military judge overruled the suppression motion, determining that, pursuant to United States v. Berry, 61 M.J. 91 (C.A.A.F. 2005), and United States v. Wright, 53 M.J. 476 (C.A.A.F. 2000), evidence of the alleged assaults of LCpls B and R was admissible under M.R.E. 413.[2]

---

[2] The military judge alternatively ruled that the evidence was admissible under M.R.E 404(b) to show a common modus operandi.

C.

Appellant challenged the military judge's evidentiary ruling before the CCA. The CCA held that the military judge did not abuse his discretion, but rather properly determined that the threshold requirements for admitting M.R.E 413 evidence were satisfied. Noting that the military judge did not explicitly reconcile Appellant's alibi evidence with LCpl B's and LCpl R's testimony, the CCA determined that "[i]t is implicit in his findings of fact that the military judge concluded that the appellant entered the female Marines' room earlier than they recall and was apprehended subsequently," and the CCA "decline[d] to disturb the factual findings of the judge on the grounds that they are unsupported by the record or clearly erroneous." Solomon, 2012 CCA LEXIS 291, at *12—*13, 2012 WL 3106790, at *4.

III.

This Court reviews a military judge's decision to admit evidence for an abuse of discretion. United States v. Ediger, 68 M.J. 243, 248 (C.A.A.F. 2010). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary,

The CCA appropriately declined to uphold the admission of evidence on that ground, and that ruling is not at issue in this appeal. Solomon, 2012 CCA LEXIS 291, at *7—*8 n.1, 2012 WL 3106790, at *3 n.1.

7

fanciful, clearly unreasonable, or clearly erroneous." United States v. White, 69 M.J. 236, 239 (C.A.A.F. 2010) (citation and internal quotation marks omitted).

M.R.E. 413(a) provides that "[i]n a court-martial in which the accused is charged with an offense of sexual assault, evidence of the accused's commission of one or more offenses of sexual assault is admissible and may be considered for its bearing on any matter to which it is relevant." "This court has noted that inherent in M.R.E. 413 is a general presumption in favor of admission." Berry, 61 M.J. at 94-95.

There are three threshold requirements for admitting evidence of similar offenses in sexual assault cases under M.R.E. 413: (1) the accused must be charged with an offense of sexual assault; (2) the proffered evidence must be evidence of the accused's commission of another offense of sexual assault; and (3) the evidence must be relevant under M.R.E. 401 and M.R.E. 402. Id. at 95; Wright, 53 M.J. at 482. For (2), the Court must conclude that the members could find by a preponderance of the evidence that the offenses occurred. Wright, 53 M.J. at 483 (citing Huddleston v. United States, 485 U.S. 681, 689-90 (1988)).

Once these three findings are made, the military judge is constitutionally required to also apply a balancing test under M.R.E. 403. Berry, 61 M.J. at 95. M.R.E. 403 provides that

8

"[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  In the M.R.E. 413 context, "[t]he Rule 403 balancing test should be applied in light of the strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible[.]"  Wright, 53 M.J. at 482 (second alteration in original) (citation and internal quotation marks omitted).  Accordingly, in conducting the balancing test, the military judge should consider the following non-exhaustive factors to determine whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice:  strength of proof of the prior act (i.e., conviction versus gossip); probative weight of the evidence; potential for less prejudicial evidence; distraction of the factfinder; time needed for proof of the prior conduct; temporal proximity; frequency of the acts; presence or lack of intervening circumstances; and the relationship between the parties.  Id.  When a military judge articulates his properly conducted M.R.E. 403 balancing test on the record, the decision will not be overturned absent a clear abuse of discretion.  United States v. Manns, 54 M.J. 164, 166 (C.A.A.F. 2000).

9

IV.

In this case, the military judge clearly abused his discretion in admitting evidence of the alleged assaults of LCpls B and R under M.R.E. 413. The problem is not that an incident for which an accused has been previously acquitted may never be admitted under M.R.E. 413; rather, the problem is that the military judge altogether failed to mention or reconcile Appellant's important alibi evidence and gave little or no weight to the fact of the prior acquittal.

The military judge in this case appropriately made findings of fact and law on the record, in which he enunciated a full M.R.E. 413 analysis, including consideration of each of the Wright factors, and conducted a balancing test under M.R.E. 403. However, the content of these supplemental findings of fact and conclusions of law reveals a clear abuse of judicial discretion.

A.

We turn first to the military judge's supplemental findings of fact. First, the military judge found that "a preponderance of evidence establishes" as a fact that "[i]n mid-November, 2009, at night or in the early morning hours, the accused broke into the barracks rooms of two sleeping female Marines." (emphasis added). In fact, no question existed from the evidence presented to the military judge as to the timeframe of the assaults. The evidence before the military judge at the

10

Article 39(a) hearing included two unequivocal statements made by LCpl B and LCpl R under oath:  LCpl B stated that she awoke to the intruder "[a]t approx. 230-300 [sic] in the morning," and LCpl R stated that she "woke up around 0230-0300" when her roommate cried out.  The uncontroverted evidence before the military judge was that LCpls B and R were assaulted between 2:30 and 3:00 a.m.

The military judge went on to find, as fact, that "[w]hen [LCpl R] awoke, [Appellant] ran out of the room, got in his car, and promptly drove away, ultimately receiving a citation for driving under the influence of alcohol."  However, none of the evidence presented supports the military judge's finding that Appellant got in his car and promptly drove away.  According to the statements of LCpls B and R, they last saw the intruder running through the head and their headmate's room.  No evidence was presented as to what the intruder did next.  The evidence actually before the military judge, however, established that Appellant was apprehended by the police as he was entering, not leaving, the base at 1:58 a.m., and that he remained in police custody until 3:26 a.m., a period of time covering the entirety of the timeframe alleged by LCpls B and R.  The military judge failed to address this discrepancy in his findings.

In making unexplained and unreconciled leaps from the evidence presented to his findings of fact, the military judge

clearly erred.  Although he did find as fact that "[Appellant] was acquitted of sexually assaulting [LCpl R] and [LCpl B] at a previous General Court-Martial," he failed to reconcile, or even mention, the fact that an uncontroverted military police report situates Appellant in police custody for the entire period of time that LCpls B and R allege they were being assaulted.  We find no support for the CCA's conclusion that "[i]t is implicit in his findings of fact that the military judge concluded that the appellant entered the female Marines' room earlier than they recall and was apprehended subsequently," and that these implicit findings are not "unsupported by the record or clearly erroneous."  Solomon, 2012 CCA LEXIS 291, at *12–*13, 2012 WL 3106790, at *4.  The military judge's findings of fact are contradictory to record evidence and wholly fail to grapple with the important alibi evidence presented by Appellant.  Accordingly, we find that the military judge clearly abused his discretion.

B.

We turn now to the military judge's conclusions of law.  The military judge appropriately conducted a full M.R.E. 413 analysis, including balancing under M.R.E. 403, on the record, but the content of that analysis is problematic.  Most problematic is the military judge's determination that the evidence's probative value outweighs the risk of unfair

12

prejudice under M.R.E. 403.  M.R.E. 403 provides that

"[a]lthough relevant, evidence may be excluded if its probative

value is substantially outweighed by the danger of unfair

prejudice, confusion of the issues, or misleading the members."

This Court has recognized that:

> inherent in M.R.E. 413 is a general presumption in favor of admission.  However, we have also noted that it is a constitutional requirement that evidence offered under Rule 413 be subjected to a thorough balancing test under M.R.E. 403.  Where that balancing test requires exclusion of the evidence, the presumption of admissibility is overcome.

Berry, 61 M.J. at 95 (citations and internal quotation marks

omitted).  "The importance of a careful balancing arises from

the potential for undue prejudice that is inevitably present

when dealing with propensity evidence."  United States v. James,

63 M.J. 217, 222 (C.A.A.F. 2006).

The M.R.E. 403 balancing in this case was incomplete.  When

considering the strength of proof of the prior act, the military

judge found that "[a]lthough the members at [the prior] General

Court-Martial did not find guilt beyond a reasonable doubt, the

testimonial evidence of [LCpl B] and [LCpl R] is compelling.  A

fact finder could easily find beyond a preponderance that the

proffered offense occurred and that the accused committed it."

In determining that the strength of proof of the prior act was

"easily beyond a preponderance" the military judge again omitted

any discussion of the military police report's tendency to

establish Appellant's alibi. Combined with the acquittal, the alibi evidence greatly reduces the strength of the proof of the prior act; failing to deal with that fact was error. Because the strength of the proof is significantly lower than the military judge determined, its probative weight is similarly reduced.

Additionally, when considering the risk of distraction, the military judge determined that "[t]here is little if any risk of distraction. It will take a fair amount of time to hear the testimony but this alone does not warrant its exclusion." On the contrary, admitting the evidence in this case resulted in a classic example of a "distracting mini-trial" on the prior alleged assaults. Berry, 61 M.J. at 97 (citation and internal quotation marks omitted). Trial counsel began his opening argument by telling the members that "[e]verything that is hidden will eventually be brought into the open, and every secret will eventually be brought into the light," and he spent almost half of his opening statement detailing the alleged assault of LCpls B and R, arguing that "this isn't the first time the accused has done something similar." He then summarized the Government theory of the case:

> The most important thing we have is a fingerprint. We have a fingerprint of the accused. And what is that fingerprint? Not a physical print, but we have similarities of actions. Some people call it modus operandi, sexual propensity, similarities of actions. And

14

> I ask all of you to take notes and notice the similarities of actions at a barracks room, at night, the next day is a work day.  Look at the similarities of actions and you will see the fingerprint of the accused in all three of these cases.

LCpls B and R were the first two witnesses called and provided detailed testimony of the November 2009 incident; approximately one-fourth of the trial was spent establishing the prior incident.  During closing arguments, trial counsel emphasized the "three secrets" Appellant tried to keep, repeatedly comparing the assaults of LCpls B, R, and K.  In rebuttal arguments, trial counsel again emphasized the similarity of the prior assaults of LCpls B and R to the present case, and the likelihood that Appellant had a propensity to assault LCpl K:

> Is there any doubt that [Appellant] was in [LCpls B and R's] room on 15 November 2009?  Absolutely not.  Is there any doubt there was touching that night?  Absolutely not. Is there any doubt that they IDed him in their room and in the head?  Absolutely not.
>
>  And let's move forward to the case at hand.  Is there any doubt that [Appellant] was in that room that night? Absolutely not.

Evidence of the prior offenses in this case devolved into exactly the sort of sidetracking of the factfinder that should be avoided when admitting M.R.E. 413 evidence.  See Berry, 61 M.J. at 97 (finding it evident that a "distracting mini-trial" occurred where trial counsel's opening statement began with reference to the M.R.E. 413 prior act and his closing statement emphasized the prior act) (citation and internal quotation marks

omitted); cf. James, 63 M.J. at 222 (where the military judge limited the scope of admissible propensity evidence to brief testimony); United States v. Bailey, 55 M.J. 38, 41 (C.A.A.F. 2001) (where the military judge "kept the witness' testimony abbreviated and focused" to ensure a minimum amount of time would be spent on M.R.E. 413 evidence). Although we recognize that the military judge would not have known when he admitted the M.R.E. 413 evidence that trial counsel would overdo it in this manner, the military judge failed to take actions during trial to limit its overuse, including declining to take judicial notice of the acquittal. The military judge also declined to heed the specific request of the Government to "negate any possible danger of unfair prejudice" to Appellant by providing a limiting instruction noting Appellant's acquittal. The result was that a great deal of time was spent in a distracting mini-trial on a collateral matter of low probative value, without the ameliorative effect of judicial recognition of the acquittal via limiting instruction or judicial notice.

Applying the appropriate deference to the ruling of a military judge, we find that in this case the military judge's failure to address or reconcile Appellant's alibi evidence or give due weight to Appellant's acquittal undermined his M.R.E. 403 balancing analysis such that the decision to admit the evidence was an abuse of discretion.

C.

"A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2006). When a military judge abuses his discretion in the M.R.E. 403 balancing analysis, the error is nonconstitutional. Berry, 61 M.J. at 97. "For a nonconstitutional error such as this one, the Government has the burden of demonstrating that 'the error did not have a substantial influence on the findings.'" Id. (quoting United States v. McCollum, 58 M.J. 323, 342 (C.A.A.F. 2003)).

The Government conceded that if it were error to admit the M.R.E. 413 evidence in this case, then it would not be harmless. The Government's entire theory of the case was that Appellant engaged in an escalating pattern of deviant sexual behavior. Without the testimony of LCpls B and R, the Government's case-in-chief consisted of LCpl K's account of the assault and restatements of his initial report. The erroneously admitted evidence was material to the Government's otherwise weak case. We hold that the Government has failed to demonstrate the error did not have a substantial influence on the findings in this case.

17

V.

The judgment of the United States Navy-Marine Corps Court of Criminal Appeals is reversed as to Specifications 1 and 3 of Charge I and the sentence.  The findings of guilty to those offenses and the sentence are set aside.  The judgment as to the remaining findings is affirmed.  The record of trial is returned to the Judge Advocate General of the Navy.  A rehearing is authorized.